UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TROY SUTTON,<br><br>                              Plaintiff,<br><br>       -v-<br><br>ERIC ADAMS, *et al.*,<br><br>                              Defendants. | 23-CV-3880 (JPO)<br><br>MEMORANDUM AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Troy Sutton, proceeding *pro se*, brings this action against Defendants the City of New York and Mayor Eric Adams.  Sutton, a former City employee who declined to comply with the City's COVID-19 vaccination mandate, contends that: (1) the City's October 20, 2021 COVID-19 vaccination mandate ("Vaccine Mandate") violated his constitutional rights under the Fourteenth Amendment's Equal Protection Clause; (2) the City's March 24, 2022 Emergency Executive Order No. 62 ("Order") selectively discriminated against him based on his socioeconomic status by exempting only professional athletes and performing artists and the individuals who work alongside them from the Vaccine Mandate; and (3) the City discriminated against him based on his age in violation of the Age Discrimination in Employment Act of 1967.  Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion to dismiss is granted.

I.       **Background**

   A.    **Factual Background**

The following facts are taken from the Amended Complaint and are presumed to be true for purposes of resolving Defendants' motion to dismiss.  (ECF No. 18 ("Compl.").)  Sutton is a former Civil Service Senior Custodian who was employed by the City's Department of Citywide

1

Administration Services (DCAS) for approximately 14 years. (Compl. ¶ 1.) On or about October 20, 2021, the City's Department of Health and Mental Hygiene (DOHMH) issued a Vaccine Mandate requiring that all employees of the City receive at least one dose of an approved COVID-19 vaccine by October 29, 2021, as a condition of their continued employment. (*Id.* ¶¶ 11, 13-15.) On or about October 27, 2021, Sutton submitted a reasonable accommodation form to DCAS's Office of Diversity and Equal Employment Opportunity (ODEEO) requesting an exemption from the mandate based on his religious beliefs. (*Id.* ¶¶ 46-47.) On or about November 9, 2021, ODEEO denied Sutton's accommodation request. (*Id.*) In February 2022, the City notified Sutton of his termination for failure to receive at least one dose of an approved COVID-19 vaccine. (*Id.* ¶¶ 17, 34-36.)

On or about March 4, 2022, Mayor Adams issued Emergency Executive Order No. 50 which, among other things, excluded "non-resident" performing artists, professional athletes, and individuals accompanying such performing artists or professional athletes from the Vaccine Mandate while they worked in New York City. On or about March 24, 2022, Mayor Adams issued Emergency Executive Order No. 62 which, among other things, amended the March 4, 2022 Order to exclude all performing artists, professional athletes, and individuals accompanying such performing artists or professional athletes from the Vaccine Mandate. (*Id.* ¶¶ 22-25; ECF No. 23-2.)

On or about June 15, 2022, Plaintiff was notified via letter that he would be reinstated at DCAS at his most recent salary, so long as he offered proof of receiving at least one dose of an approved COVID-19 vaccine by June 30, 2022. (Compl. ¶ 36.) On or about February 10, 2023, the City lifted the Vaccine Mandate for all municipal employees. (*Id.* ¶ 62.)

Sutton challenges the Vaccine Mandate and Order under the Fourteenth Amendment's Equal Protection Clause. Sutton alleges that there "is no justifiable, rational basis related to public health" for Defendants' "disparate treatment" of public employees. (*Id.* ¶ 63.) Although private businesses were "subject to fines" for failing to comply with the Vaccine Mandate, Sutton alleges that Mayor Adams "publicly stated that his administration would not enforce the [Vaccine Mandate] for private businesses" and in fact did not "fine a single private business." (*Id.* ¶¶ 18-21.) According to Sutton, when "reporters asked [Mayor] Adams why he was treating public servants different[ly] than other workers, [Mayor Adams] responded, 'I don't think anything dealing with [COVID-19] is—makes sense, and there's no logical pathway." (*Id.* ¶ 65.) Sutton alleges that the "absence of any rational basis for treating identically situated people differently leaves only impermissible considerations." (*Id.* ¶ 67.)

Sutton also alleges that the denial of his reasonable accommodation form was "based on retaliation and discrimination from the [ODEEO]" which "decided not to grant his religious exemption" as a result of "numerous complaints" Sutton filed with the ODEEO over the course of his career, which the ODEEO never addressed. (*Id.* ¶¶ 47-49.) In addition, Sutton alleges that as a result of an accident he sustained, he developed a disability which required him to transfer from City Hall to the Bronx, which the Deputy Commissioner opposed because of Sutton's valuable work at City Hall. (*Id.* ¶ 50.) Sutton alleges that the "Deputy Commissioner" and his "borough supervisor" discriminated and retaliated against him for the three years leading up to Sutton's termination. (*Id.* ¶¶ 50-51.) Sutton "complained to ODEEO more than [thirty] times along with writing his supervisor up more than [twenty] times." (*Id.* ¶ 53.) Sutton "had to request a reasonable accommodation from the same [ODEEO] officer who . . . stated herself that she did not want [Sutton] to leave City Hall . . . due to pressure from the Deputy Commissioner

3

and the fact that [Sutton] was doing an excellent job and [the] administration did not know who could replace [him]." (*Id.* ¶ 54.) Sutton alleges that he "was looked upon as someone that DCAS wanted to terminate due to his [inability] to [s]atisfy the Deputy Commission[er]." (*Id.* ¶ 55.) According to Sutton, his "sincere[ly] held religious belief[s] would not have matter[ed]" because ODEEO already wanted to terminate him. (*Id.* ¶ 55.)

Finally, Sutton alleges that he was also discriminated against on the basis of his age. Sutton was fifty years old at the time of his termination. (*Id.* ¶ 151.) Sutton was "discriminated against and was denied numerous promotion[s] that [were given] to other individuals based on their age." (*Id.* ¶ 134.) In particular, Sutton endeavored to pass the fire safety exam to become a fire safety director for DCAS but was ultimately unable to complete the final "onsite" part of the exam because the fire alarm system at City Hall was not functioning and the building director did not allow Sutton to be stationed in another DCAS building that had a functioning fire alarm. (*Id.* ¶¶ 141-142.) However, "numerous employees from a younger age group . . . were allowed to complete their exam[s] and become fire safety director[s] for DCAS, as well as advanc[e] their careers to other agency positions." (*Id.* ¶ 144.) Sutton alleges that discrimination on the basis of his age and disability "played a very big part in" his termination. (*Id.* ¶ 155.)

  **B.  Procedural History**

Plaintiff commenced this action on May 9, 2023. (ECF No. 1.) Defendants filed a motion to dismiss the original complaint on September 5, 2023. (ECF No. 13.) Plaintiff filed an amended complaint on September 26, 2023. (ECF No. 18.) Defendants filed a motion to dismiss the amended complaint on November 2, 2023. (ECF No. 22.) Plaintiff filed an opposition to Defendants' motion to dismiss the amended complaint on December 1, 2023. (ECF No. 26.) Defendants filed a reply in support of their motion to dismiss the amended complaint on December 28, 2023. (ECF No. 29.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must "draw all inferences in the light most favorable to the non-moving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). In deciding a motion pursuant to Rule 12(b)(6), "the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), *aff'd*, 500 F. App'x 42 (2d Cir. 2012) (summary order).

Plaintiff is proceeding *pro se*. "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

## III. Discussion

### A. Equal Protection Claims

Sutton brings his claims against Defendants in three separate causes of action, each referencing the Fourteenth Amendment's Equal Protection Clause. (Compl. ¶¶ 76-158.) "The Equal Protection Clause 'does not require that all persons be dealt with identically, but it does

5

require that a distinction made have some relevance to the purposes for which the classification is made.'" *Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023) (quoting *Kwong v. Bloomberg*, 723 F.3d 160, 169 (2d Cir. 2013)); *see also Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)). "In other words, '[t]he Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.'" *Clementine Co., LLC*, 74 F.4th at 89 (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). "Accordingly, 'if a law neither burdens a fundamental right nor targets a suspect class,' it will be upheld 'so long as it bears a rational relation to some legitimate end.'" *Id.* (quoting *Romer*, 517 U.S. at 631).

The Vaccine Mandate does not discriminate against a protected class. Sutton alleges that his protected class is "City workers" (Compl. ¶¶ 14, 27, 44, 80), and also cites his "socioeconomic status" (*id*. ¶ 85). Neither of these classifications is a protected class under the Equal Protection Clause. Nor does the vaccine mandate implicate a fundamental right. "Both [the Second Circuit] and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (citing *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25-31, 37 (1905). "For this reason, '[t]he City's Executive Orders requiring vaccination for subsets of City workers have been challenged unsuccessfully in this Circuit.'" *Commey v. Adams*, No. 22-CV-0018, 2022 WL 3286548, at *4 (S.D.N.Y. Aug. 11, 2022), *appeal dismissed* (Oct. 27, 2022) (quoting *Abadi v. City of New York*, No. 21-CV-8071, 2022 WL 347632, at *4 (S.D.N.Y. Feb. 4, 2022) (denying a

preliminary injunction to a plaintiff challenging a vaccination requirement for city employees)); *see also Marciano v. de Blasio*, 589 F. Supp. 3d 423 (S.D.N.Y. 2022), *appeal dismissed sub nom. Marciano v. Adams*, No. 22-CV-570, 2023 WL 3477119 (2d Cir. May 16, 2023), *cert. denied*, 144 S. Ct. 286 (2023) (dismissing a city employee's substantive due process claim challenging an order requiring city employees to be vaccinated); *Maniscalco v. New York City Dep't of Educ.*, 563 F. Supp. 3d 33, 38-39 (E.D.N.Y. 2021), *aff'd*, No. 21-CV-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (denying a preliminary injunction to plaintiffs challenging the New York City Department of Education's vaccine mandate).

   As the Vaccine Mandate does not discriminate against a protected class or implicate a fundamental right, the Court reviews the Vaccine Mandate under the rational basis standard. Under the rational basis standard, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). "This form of review is highly deferential." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018).

   The City's vaccine mandate requiring City employees to obtain a COVID-19 vaccine has a rational basis related to a legitimate government interest. The City has a legitimate interest in protecting the public against COVID-19, particularly in City buildings. Sutton takes issue with the fact that the City mandated City employees to obtain a COVID-19 vaccine while exempting professional athletes and performing artists from obtaining a COVID-19 vaccine, arguing that it is illogical to require that only some individuals obtain a vaccine as opposed to a blanket requirement that all individuals obtain a vaccine. "The Vaccine Mandate applies to the class of people who work in the New York City public [buildings]. . . The fact that it does not apply to

professional athletes [or performers] is of no significance here." *Kane v. de Blasio*, 623 F. Supp. 3d 339, 356 (S.D.N.Y. 2022).

Defendants had a rational basis for treating City employees differently from professional athletes and performing artists. Individuals may choose whether to attend a performance or game with unvaccinated performers or athletes and accept whatever risk those performers or athletes pose. In contrast, individuals may have less of a choice as to whether to attend City buildings by nature of the business individuals would be attending to in those buildings. And it is of great importance to the City that individuals be able to enter City buildings with a lower risk of contracting COVID-19.

Moreover, the Order states two motivations for excluding professional athletes and performing artists from the Vaccine Mandate. First, the Order states that both professional athletes and performing artists "frequently conduct their work at venues both inside and outside of the City, without regard to their residence in the City, and their work benefits the City's economic recovery from the pandemic." (ECF No. 23-2.) Second, the Order also states that the City's professional sports teams are "at a competitive disadvantage because visiting teams can field unvaccinated players, and this competitive disadvantage has negatively impacted, and continues to negatively impact, [the City's] teams' success, which is important to the City's economic recovery and the morale of City residents and visitors." (*Id.*) "[E]ven if [P]laintiff[ ] disagree[s] with it, the Order at issue represents a rational policy decision surrounding how best to protect [individuals] during a global pandemic." *Commey*, 2022 WL 3286548, at *5 (quoting *Maniscalco*, 563 F. Supp. 3d at 39); *see also Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) (finding that rational basis review applied to an order issued by the Commissioner requiring all Department of Education employees to be vaccinated against COVID-19, a standard that the

8

order "plainly satisifie[d]" as a "reasonable exercise of the State's power to act to protect the public health"); *Maniscalco*, 563 F. Supp. 3d at 39 (finding the requirement that all Department of Education employees be vaccinated against COVID-19 "a rational policy decision surrounding how best to protect children during a global pandemic").

"Notwithstanding that the [Vaccine Mandate] do[es] not draw a distinction based on a constitutionally protected characteristic, a plaintiff like [Sutton] may still pursue 'an equal protection claim on one of two theories: selective enforcement or class of one.'" *Abadi*, 2022 WL 347632, at *8 (internal citations and quotation marks omitted). Under a "selective enforcement" or *LeClair* claim, Sutton may assert that he was "treated differently than an identifiable, similarly situated group of individuals for malicious reasons, including but not limited to racial prejudice." *Murphy v. City of New York*, No. 23-CV-1925, -- F. Supp. 3d --, 2024 WL 916563, at *8 (S.D.N.Y. Mar. 4, 2024) (citing *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980)). Under a "class of one" or *Olech* claim, Sutton may assert that he was "intentionally treated differently from others similarly situated and that there was no rational basis for this difference in treatment." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To allege either a *LeClair* or *Olech* claim, a plaintiff must identify a 'comparator who received more favorable treatment from the defendants.'" *Id.* (citing *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019)). "An *Olech* claim 'requires an extremely high degree of similarity between a plaintiff and comparator,' while a *LeClair* claim requires a 'reasonably close resemblance.'" *Id.* (citing *Hu*, 927 F.3d at 93). "Given this inquiry's 'fact-intensive nature,' the Circuit has 'cautioned against deciding whether two comparators are similarly situated on a motion to dismiss.'" *Id.* (citing *Hu*, 927 F.3d at 97).

Sutton fails to adequately allege a "class of one" claim or "selective enforcement" claim. First, Sutton fails to adequately allege a comparator that has either an "extremely high degree of similarity" or a "reasonably close resemblance" to Sutton. *Murphy*, 2024 WL 916563, at *8. Both the Vaccine Mandate and the Order apply equally to all City employees, and Sutton does not allege that Defendants treated him selectively as compared to other City employees. In challenging the Vaccine Mandate, Sutton compares City employees like himself to private sector employees. These private sector employees do not have an "extremely high degree of similarity" or a "reasonably close resemblance" to Sutton. In challenging the Order, Sutton compares City employees like himself to professional athletes and performing artists, and the people that work alongside those professional athletes and performing artists. These professional athletes, performing artists, and people that work alongside them, also do not have an "extremely high degree of similarity" or a "reasonably close resemblance" to Sutton.

Second, Sutton fails to adequately allege that any selective treatment was motivated by a "malicious reason" or that "there was no rational basis for this difference in treatment." *Murphy*, 2024 WL 916563, at *8. Sutton speculates, without the inclusion of any supporting factual allegations, that Defendants possessed five unlawful motivations for implementing the Order, including Sutton's socioeconomic status (Compl. ¶¶ 85-87, 92-93), Defendants' "self-preservation" (*id.* ¶¶ 94-101), "direct animus towards [Sutton] because of the stigma associated with not getting [vaccinated]" (*id.* ¶¶ 102-105), "generating revenue" for the City (*id.* ¶ 106), and to relieve the City of its obligation to pay salaries, health benefits, and pensions by terminating employees (*id.* ¶ 107). "[M]ere speculation is not sufficient to defeat a motion to dismiss." *Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 21-CV-484, 2021 WL 5500084, at *2 (2d Cir. Nov. 24, 2021) (summary order) (citing *Twombly*, 550 U.S. at 555 ("Factual allegations must be

enough to raise a right to relief above the speculative level[.]")). As discussed above, Defendants had a rational basis for treating City employees differently from professional athletes and performing artists.

Sutton's equal protection claims are therefore dismissed.

### B. ADEA and Title VII Claims

Defendants first contend that Sutton's ADEA claim should be dismissed because Sutton's addition of the ADEA claim in the Amended Complaint was improper. "Additional allegations can only be added 'with the opposing party's written consent, or the court's leave,' Fed. R. Civ. P. 15(a)(2), and neither was present here." *McCray v. Patrolman N.A. Caparco*, 761 F. App'x 27, 30 (2d Cir. 2019) (summary order). However, as Sutton is proceeding *pro se*, the Court will construe his amendment as a motion for leave to amend and grants Sutton's motion.

Defendants further contend that Sutton's ADEA claim should be dismissed because he has failed to attach a timely notice letter form the United States Equal Employment Opportunity Commission (EEOC), and he does not sufficiently allege facts giving rise to a plausible inference of age discrimination. "A plaintiff seeking to recover under the ADEA must file a discrimination charge with a state agency within 300 days of the occurrence of the allegedly unlawful employment practice." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

The same is true for Sutton's Title VII claims to the extent that Sutton intended to raise such claims. (Compl. ¶ 147.) "Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'" *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir.2006) (per curiam).

Sutton alleges that he filed "numerous complaints directly with the City of New York (EEO) agency." (Compl. ¶ 152.) He appears to concede, however, that he did not file

11

discrimination charges with the EEOC or the relevant state agency, which is the New York State Division of Human Rights, within 300 days of the challenged conduct. (ECF No. 26 at 23.) In his brief in opposition to Defendants' motion to dismiss, Sutton argues that his failure to file timely complaints with the EEOC and to provide a timely notice letter from the EEOC is as a result of misconduct on the part of City EEO staff. (ECF No. 25 at 23-25.) However, Sutton does not allege facts that would plausibly support a basis for excusing the exhaustion requirement.

Even assuming that Sutton's ADEA and Title VII claims were timely, his allegations fail to plausibly support a claim under those statutes. He fails to sufficiently allege facts giving rise to a plausible inference of age discrimination. The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a). To prevail on an ADEA age discrimination claim, it is insufficient for a plaintiff to allege "'that age was simply a motivating factor' in the employer's adverse action." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009). Instead, to allege age discrimination under the ADEA, a plaintiff must allege "that age was the 'but-for' cause of the employer's adverse decision." *Id.* (quoting *Gross*, 557 U.S. at 174). Sutton does not allege that age was the "but for" cause of his termination, but rather, that his age, as well as an unspecified disability, "played a very big part in" his termination. (Compl. ¶ 155.) Similarly, Sutton appears to assert that he was terminated in violation of Title VII for making unspecified complaints to City EEO personnel. However, he fails to allege facts that would support a plausible inference that age or retaliation was a cause of his termination, particularly given his specific allegations that he was terminated because of the failure to comply with the Vaccine Mandate.

Sutton's remaining claims are therefore dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted.

The Clerk of Court is directed to terminate the motion at ECF No. 22 and to close this case.

SO ORDERED.

Dated: May 13, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge